IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **STEPHON PRATHER, # 433-045,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RWT-14-0682 |
| **SGT. S. BOOZEL, et al.,** | * | |
| Respondents. | * | |

## **MEMORANDUM OPINION AND ORDER**

On September 17, 2014, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment in the above-captioned civil rights case. ECF No. 17. Plaintiff filed his opposition on October 9, 2014. ECF No. 18. The Court has reviewed the motions, related memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court grants Defendants' Motion.

## **Background**

At all times relevant to the Complaint, Plaintiff Stephon Prather ("Prather") was incarcerated at Roxbury Correctional Institution ("Roxbury").[1] Prather claims that on December 26, 2013,[2] an officer crushed his left hand when he kicked the feed-up slot in his cell door closed, resulting in fractures of his middle and index fingers. ECF No. 1, § III. Prather states the incident occurred while he was assigned to administrative segregation. *Id.* In addition,

---

[1] Prather was transferred to Patuxent Institution and later to Howard County Detention Center for purposes of standing trial in that jurisdiction on an unrelated criminal matter. ECF No. 19.

[2] The date on which Plaintiff Stephon Prather ("Prather") asserts the incidents occurred is unclear. In his original Complaint, Prather states that all incidents occurred on December 26, 2013. ECF No. 1, § III. In his Amended Complaint, however, Prather states that the officer kicked his feed-up door on December 26, 2013 and that the assault occurred on December 29, 2013. ECF No. 4, § III. According to the Serious Incident Report conducted by the Department of Public Safety and Correctional Services, the assault occurred on December 29, 2013. ECF No. 17, at Ex. 1 (Serious Incident Report). The Serious Incident Report does not address allegations of an officer kicking Prather's feed-up door.

Prather claims that on December 29, 2013, Captain Crist and Officers Boozle, Donaldson, Keefer, Keyton, and Haer "were involved in assaulting" him. ECF No. 4, § III. He alleges the Officers barged into his cell while he was asleep, beat him, and used "UFC style tactics" to remove him from the cell. *Id.* Prather contends the beating lasted five to six minutes, and that once removed from his cell, he was stripped naked and "paraded" down the tier nude, then put on a "golf cart stretcher" and carted across the prison compound nude. *Id.* Prather alleges the incident occurred because the Officers are racist, and that he sustained injuries to his ribs, arms, elbow, and neck as a result. *Id.* After the incident, Prather was placed in the Administrative Segregation Isolation Area ("ASIA") and then transferred to the Patuxent Institution for a mental health evaluation. ECF No. 17-1, at 2.

Defendants, on the other hand, assert that on December 29, 2013 at approximately 7:00 a.m., Officer Donaldson noticed Prather mumbling, singing, and bouncing his body off of his cell door. *Id.* at 3. Officer Donaldson reported Prather's strange behavior to the Control Center and the Officer-in-Charge, Sgt. Boozel. *Id.* Sgt. Boozel noted the strange behavior in-person, but determined Prather should simply be observed since he was not posing a threat to himself or the staff. *Id*. At approximately 10:00 a.m., Prather's behavior escalated. *Id*. at 4. During the process of closing feed-up slots, Prather began kicking his cell door, flipping his bed over, and banging his head on the wall. *Id*. Both Sgt. Boozel and the Shift Commander, Captain Crist, were notified of the change in Prather's behavior, and again determined that Prather should simply be closely monitored. *Id*.

At approximately 10:45 a.m., Sgt. Boozel observed Prather standing on the toilet attempting to tie a noose made from sheets around his neck. *Id.* Sgt. Boozel and Officers Keefer, Keyton, and Haer attempted to talk Prather into removing the noose from his neck,

stepping down from the toilet, and coming to the cell door to be handcuffed. *Id.* Prather smiled and laughed, but did not comply. *Id.* In order to prevent Prather from harming himself, Sgt. Boozel and the Officers entered Prather's cell, and encountered Prather's swinging arms and legs when attempting to secure him. *Id.* at 4–5. Sgt. Boozel and Officer Keefer gained control of Prather's arms by placing them behind his back and handcuffing him, while Officers Haer and Keyton secured his legs. *Id.* at 5. Mindy Baker, R.N., who observed the cell extraction, stated that Prather was threatening to kill everyone and smiling in a bizarre manner that she attributed to some internal stimuli. *Id.* at 8. No injuries were reported as a result of the use of force. *Id.* at 6. Once restrained, Captain Crist ordered that Prather be moved to a de-escalation cell in ASIA, that a video camera be set up to record his actions, and that wellness checks be conducted every fifteen minutes by an inmate observer. *Id.* at 5–6, 8.

While in ASIA, both medical and psychology staff evaluated Prather. *Id.* at 8. At 12:45 p.m., Prather was observed to be calm in the ASIA cell but refused to come to the door to answer questions posed by Teresa Folk, LPN. *Id.* at 8–9. Folk also observed that while Prather appeared to be in good physical condition with no facial injuries, he was mumbling, smiling, and singing in apparent response to internal stimuli. *Id.* At 6:30 p.m., Folk observed Prather handcuffed and standing near the external window of his cell, pacing and engaging in rambling speech in response to hearing his name. *Id.* When Prather was asked to turn his back to the door to allow the handcuffs to be removed, he refused to do so and continued to speak in apparent response to internal stimuli. *Id.* Folk observed no injuries to Prather's hands, but noticed a bruise to his right shoulder and several superficial abrasions to the middle of his back, left shoulder, and left wrist. *Id.* at Ex. 8, pp. 11–14. By the morning of December 31, 2013, Prather was observed in a further regressive state and demonstrating continually destructive behavior,

such as urinating on his heater, smearing food on the window of his cell, throwing food at passersby, spitting on the floor, yelling unintelligibly.  ECF No. 17, at Ex. 8, p. 7.

Prather had previously been evaluated by Shakora Banks, Ph.D on arrival to Roxbury on December 26, 2013,[3] during which time he claimed he was seeing demons, was preoccupied with the assassination of Abraham Lincoln, and thought he was being "tased" by the police.  *Id*. at 10.  Banks reported that Prather evidenced no history of psychiatric hospitalizations or diagnoses of schizophrenia or psychosis, and noted that correctional staff had indicated Prather's manner of speaking changed while speaking on the phone.  *Id*.  Banks concluded that Prather's behavior was not the result of a serious mental illness, but that he was malingering for purposes of secondary gain.  *Id*.

As a result of the incident requiring Prather's removal from his cell by Defendants, he received a Notice of Infraction charging him with violating Rule 101 (assault and battery on staff) and Rule 400 (disobeying a direct lawful order).  *Id*.  at Ex. 1, pp. 12–14.  On February 10, 2014, Prather was provided a hearing on the charges, and pled guilty to assaulting staff but not guilty of disobeying an order.  *Id.*  He was found guilty of violating both rules.  *Id.* Prather did not lose any good conduct credits as a result of the guilty finding, but was given 30 days of disciplinary segregation and 180 days loss of visitation privileges.  *Id*. at Ex. 12, p. 3.

## Discussion

Under the Prison Litigation Reform Act of 1995 ("PLRA"), as amended, prisoners must exhaust "such administrative remedies as are available" prior to filing suit in federal court challenging prison conditions.  42 U.S.C. § 1997e(a) (2012).  Defendants assert that Prather failed to exhaust his administrative remedies, as Prather never filed a complaint with the Inmate

---

[3] Prather was transferred to the Roxbury Correctional Institution from Howard County Detention Center as a pre-trial detainee due to behavioral problems.  ECF No. 17-1, at 10.

Grievance Office ("IGO") regarding his claim of excessive force. ECF No. 17, at Ex. 14. Prather does not deny failing to pursue any administrative remedies, but states it was not possible for him to do so while in an isolation cell at ASIA and Patuxent, where he was kept until January 27, 2014. ECF No. 18. Prather maintains, and the record supports, that he was denied paper and pen the entire time he was left in isolation. *Id*.

This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Spires v. Harbaugh*, 438 F. App'x 185, 186 (4th Cir. 2011) (quoting *Porter v. Nussle*, 534 U.S. 516, 516 (2002)). An administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). On the other hand, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies which once were available to him no longer are. *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). To be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *Id.* (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

The Court cannot consider a claim that either fails to satisfy the administrative exhaustion requirement under the PLRA or fails to demonstrate that the defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528

(D. Md. 2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id.* at 530; *see also Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"). This Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda*, 478 F.3d at 1225.

Defendants state that they notified the Internal Investigation Unit ("IIU") of the incident, but that no investigation took place because the IIU determined that any assault which did occur was on the staff, and not on Prather. ECF No. 17, at Ex. 9. Prather alleges pictures were taken of his injuries at Patuxent, and that although he was told IIU would contact him, he was never contacted or interviewed. ECF No. 18. In addition, Prather maintains that he was unable to file an excessive force complaint with the IGO because he was denied all writing materials while in an isolation cell at ASIA and Patuxent. The lack of writing materials, however, ended upon his removal from isolation on January 27, 2014—along with any hindrance to the administrative process. Prather still made no effort to file an administrative complaint, and has still not attempted to avail himself of remedies available through the administrative process. That Prather may have been told he would be contacted by IIU for an interview, is not a substitute for his never attempting to initiate an investigation into the alleged excessive force incident. Moreover, Prather pled guilty at the adjustment hearing to assaulting the officers who extracted him from

6

his cell, and does not argue that his guilty plea was in any way coerced.  Where, as here, the plaintiff fails to seek redress through the administrative remedy process, fails to demonstrate how the defendants may have forfeited their opportunity to address the merits of his complaint, and fails to address how a conflicting plea is invalid, the defendants are entitled to summary judgment.

Accordingly, it is, this 10th day of February, 2015, by the United States District Court for the District of Maryland,

**ORDERED**, that Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 17) is **GRANTED**; and it is further

**ORDERED**, that judgment is **ENTERED** in favor of Defendants; and it is further

**ORDERED**, that the Clerk is **DIRECTED** to close this case; and it is further

**ORDERED**, that the Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to Plaintiff and to Counsel for Defendants.

 

/s/
Roger W. Titus
United States District Judge